# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Rickey Jones, | Civil No. 07-3577 (DWF/SRN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND AMENDED ORDER** |
| City of Minneapolis, Minnesota;<br>Officer Jonathan Kingsbury (in his individual capacity); Officer Craig Taylor (in his individual capacity); Officer Jomar Villamor (in his individual capacity); Officer Kevin Lazarchic (in his individual capacity); and John Does 1-5, | |
| Defendants. | |

_____

Jill Clark, Esq., Jill Clark, PA, counsel for Plaintiffs.

Susan Segal, Esq., and James A. Moore, Esq., Minneapolis City Attorney's Office, counsel for Defendants.
_____

## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Defendants City of Minneapolis (the "City"), Minnesota and Officers Jonathan Kingsbury, Craig Taylor, Jomar Villamor, and Kevin Lazarchic. For the reasons stated below, the Court grants the motion in part and denies the motion in part.

**BACKGROUND**

Plaintiff is a self-employed photographer who takes and sells pictures in and around downtown Minneapolis. (Aff. of James A. Moore ("Moore Aff.") ¶ 4, Ex. 1 (Dep. of Rickey Jones ("Jones Dep.")) at 31-35.) Plaintiff takes pictures outside of nightclubs and comes into frequent contact with police officers of the First Precinct of Minneapolis, which includes the downtown area. (*Id.*) Plaintiff claims that his work has included photos or video of police officers on duty when they were allegedly engaging in inappropriate behavior or behavior that makes them look bad. (*Id.* at 60.) Plaintiff asserts that some police officers became angry or irritated at Plaintiff for documenting their behavior. (Jones Aff. ¶ 4.) Plaintiff claims that various Minneapolis police officers have harassed and mistreated him in retaliation for taking pictures and for complaining about police behavior. Plaintiff cites to various incidents, which the Court describes below.[1]

Plaintiff asserts that he was prevented from taking pictures outside and "run out" of certain nightclubs that were his places of business. (Jones Aff. ¶ 5.) For example, Plaintiff asserts that Officer Villamor repeatedly harassed him outside the Quest nightclub for not having a permit to take pictures. Plaintiff asserts that he does not need a permit,

---

[1] Plaintiff has submitted a great deal of evidence of allegedly retaliatory and harassing behavior on the part of the police. The Court's recital of Plaintiff's allegations is not intended to be exhaustive, and the Court makes no findings with respect to the relevance, or lack thereof, of submitted evidence that is not discussed in this Order. The Court will address appropriately submitted motions *in limine* at a later date.

yet Minneapolis police officers continue to "hassle" Plaintiff for not having one. (Jones Aff. ¶ 6.)[2]

Plaintiff claims that Officer Kingsbury beat him in Spring 2000 while he was in handcuffs and not resisting arrest. (Jones Aff. ¶ 10.) Plaintiff asserts that during the beating, Kingsbury said something to the effect "it's the camera man, we finally got him!" (*Id.*) Plaintiff complained to the Civilian Police Review Authority ("CRA"), alleging that Kingsbury used excessive force during the Spring 2000 incident. Plaintiff alleges that he was persistently harassed by Minneapolis police officers after he made this CRA complaint. For example, on July 28, 2000, Officer Villamor seized Plaintiff's camera and cited him for peddling without a license. (Moore Aff. ¶ 6, Ex. 3 (Dep. of

---

[2] Plaintiff has submitted a letter that he obtained from the Minneapolis Regulatory Services Department dated March 31, 2004, that reads in relevant part:

TO WHOM IT MAY CONCERN:

Chapter 335 of the Minneapolis Code of Ordinances **Street Photographers** has been designated for repeal by the Minneapolis City Council. As such, this office has not issued this license for a significant period of time, and will not issue the license in the future.

The bearer of this letter, **RICKEY RENELL JONES dob 04/10/59**, has made a good faith attempt to obtain the license, but will be unable to due to the aforementioned City Council instruction. Mr. Jones is in possession of a copy of the ordinance which regulates the activities of Street Photographers. So long as Mr. Jones comports himself in accordance with the Regulations set forth in Section 335.70; this office has no objections to him operating as a Street Photographer.

(Jones Aff. ¶ 8; Clark Aff. Ex. C.) Plaintiff maintains that he tried to show this letter to
(Footnote Continued on Next Page)

Jomar Villamor ("Villamor Dep.")) at 68-70; Jones Aff. ¶ 13.) On June 6, 2001, Officer Villamor pulled Plaintiff over and issued three citations (no proof of insurance, failure to use a turn signal, and blocking traffic). (Jones Aff. ¶ 14.) On June 8, 2001, Plaintiff filed a complaint against Officer Villamor with the Minneapolis Department of Civil Rights. (Clark Aff. Ex N.)

On August 4, 2001, Plaintiff was at a gas station convenience store. Officer Kingsbury entered the store. Plaintiff claims that Officer Kingsbury approached him and said "you got something to say to me now?" and then punched Plaintiff in the face and the chest. (Jones Aff. ¶ 17; Jones Dep. at 77-78.) Officer Kingsbury has admitted that he pushed and "swung at" Plaintiff, but that he did so to protect himself. (Clark Aff. Ex. F.) Plaintiff also claims, without detail, that Officer Craig Taylor restrained and punched him at this time. (Jones Aff. ¶ 21.) Plaintiff asserts that he filed a CRA complaint, that the complaint was sustained against Officer Kingsbury, and that the sustained finding was forwarded to the Chief of Police of the Minneapolis Police Department. (Jones Aff. ¶ 26.)

On September 14, 2002, two Minneapolis police officers arrested Plaintiff and placed him in jail for "littering." (Jones Aff. ¶ 28.) Plaintiff submits that the "littering" charge was ultimately dismissed by City prosecutors. (Clark Aff. Ex. K.) On October 3, 2002, Plaintiff was arrested by two Minneapolis police officers for taking pictures.

---

(Footnote Continued From Previous Page)
the police.

Plaintiff submits that this charge was also dismissed. (Clark Aff. Ex. K.) On November 7, 2002, Officer Villamor issued citations to Plaintiff, who was in a stopped vehicle, for blocking traffic flow, driving without a seatbelt, and failure to show proof of insurance. Officer Villamor ordered Plaintiff out of the car. Plaintiff refused and Officer Villamor opened the door and grabbed Plaintiff. Officer Villamor attempted to handcuff Plaintiff and used force to do so. Plaintiff was booked for disorderly conduct and obstruction of legal process. The charges were ultimately dismissed. Plaintiff claims that he filed a complaint with the Civil Rights Department of the City of Minneapolis and that the complaint was sustained and sent to Minneapolis' Chief of Police. (Jones Aff. ¶ 30.)

On November 23, 2002, Plaintiff was arrested at Marquette Place and his cameras were seized and he was jailed. During a state criminal case against Plaintiff relating to this incident, Plaintiff attempted to use a videotape that he claims would have exculpated him and showed misconduct of the police. Plaintiff asserts that certain scenes were edited out while the tape was in the possession of the City of Minneapolis. (Clark Aff. ¶ 3.) Plaintiff also complained to the CRA about the incident at Marquette Place and the actions of Officers Lazarchic and Steve Wourinen.[3]

Jones alleges that after he complained about the Marquette Place incident, the police engaged in numerous retaliatory acts against him. For example, Plaintiff claims

---

[3] Plaintiff litigated his claims regarding the Marquette Place incident in a separate lawsuit, Civil No. 04-4856 (DWF/JSM). The parties stipulated to raise the allegations of retaliation in this case. Officer Wourinen is not a defendant in this action.

that on New Years Eve 2003, Officer Wourinen yelled to Plaintiff on a loudspeaker "Oh, you aint [sic] left town yet?" (Jones Aff. ¶ 31.) Plaintiff also claims that on August 30, 2003, Officer Wourinen followed Plaintiff with a radar gun, pretending like he was going to shoot Plaintiff. (Jones Aff. ¶ 32.) On December 26, 2003, Plaintiff was ticketed for illegal use of a car horn and failure to stop at the white line. The failure to stop was dismissed and Plaintiff pleaded guilty to use of the horn. (Clark Aff. ¶ 5.) On March 27, 2004, Plaintiff claims that he was harassed while he was walking to his parked car and that when he got to his car, he was cited for parking violations. Plaintiff asserts that other cars parked near his were not ticketed. (Jones Aff. ¶ 33.) Plaintiff claims that police told him that he was "public enemy number 1." (*Id*.) On July 4, 2004, Plaintiff was ticketed by Officer Wourinen for not having a driver's license. (Clark Aff. Ex. A.) The charge was dismissed. (Jones Aff. ¶ 35.) Plaintiff also claims that officers driving by Plaintiff in the warehouse district would shine the squad car spotlight on him. (Jones Aff. ¶ 36.) On May 13, 2004, a Minneapolis police officer alleged that Plaintiff made an illegal turn and ticketed him for no proof of insurance. (Jones Aff. ¶ 36.) The charge was dismissed. (Clark Aff. ¶ 7.) On July 15, 2004, Plaintiff claims that police shined spotlights on him but that a white photographer took photos without being bothered. (Clark Aff. Ex. A.) On July 28, 2004, Officer Lazarchic ticketed Plaintiff for interfering with traffic because he stepped into the street to take a picture. Plaintiff claims that other civilians in the area were in the street, but were not ticketed and that there was no traffic to impede. (Jones Aff. ¶ 40.)

On August 26, 2004, Plaintiff withdrew his CRA complaint related to the Marquette Place incident so that he could litigate his claims in federal court. (Jones Aff. ¶ 42; Clark Aff. Ex. T.) Plaintiff asserts that, at first, Officer Lazarchic thought Plaintiff was dropping all claims against him and thanked him and took a picture with Plaintiff and said "now I can call off my dogs." (Jones Aff. ¶ 43.) Plaintiff also asserts that when Officer Lazarchic realized Plaintiff was pursuing a federal action, he demanded the picture back. (Jones Aff. ¶ 43.) In July 2005, Officer Lazarchic ticketed Plaintiff for turning the wrong way on a one-way street and Plaintiff claims that Officer Lazarchic told Plaintiff he was ticketing him because "you have a lawsuit in my mailbox." (Jones Aff. ¶ 44.) Plaintiff asserts numerous additional alleged incidents of harassment. The Court considers those incidents but does not detail them here.

## MEMORANDUM

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Plaintiff's Complaint contains a single count brought under 42 U.S.C. § 1983. Plaintiff alleges violations of the First, Fourth, and Fourteenth Amendments. Specifically, Plaintiff makes claims for excessive force, retaliation, and a substantive due process violation. Plaintiff alleges that both Officers Kingsbury and Taylor used excessive force during the August 4, 2001 incident at the gas station convenience store. Plaintiff also asserts that Defendants engaged in a pattern and practice of behavior motivated to retaliate against Plaintiff for exercising First Amendment rights. Specifically, Plaintiff asserts that Defendants retaliated against Plaintiff for making complaints about alleged police misconduct and that he has generally been harassed by the Minneapolis police for taking photographs of them. Plaintiff also asserts that the City is liable for a pattern of retaliatory conduct by its officers. Finally, Plaintiff asserts that

8

Defendants' retaliatory behavior is conscience shocking and therefore has violated Plaintiff's substantive due process rights.

## II. Excessive Force

Plaintiff alleges a Fourth Amendment violation for excessive force against Officers Kingsbury and Taylor related to the August 4, 2001 incident at the gas station convenience store. Defendants concede that there are material issues of fact with respect to the actions of Officer Kingsbury and have withdrawn their motion for summary judgment on the excessive force claim against Officer Kingsbury. Defendants, however, assert that Officer Taylor is entitled to summary judgment on the claims against him arising out of the August 4, 2001 incident because the statute of limitations has expired and because Officer Taylor is entitled to qualified immunity. Defendants maintain that the statute of limitations on the excessive force claim expired on August 4, 2007. Plaintiff concedes that Officer Taylor was not served in time to trigger review of the August 4, 2001 incident. Accordingly, the Court dismisses the excessive force claim against Officer Taylor.[4] Because the excessive force claim against Officer Taylor is dismissed on statute of limitations grounds, the Court need not consider Defendants' qualified immunity argument.

---

[4] In an August 31, 2009 Order, the Court denied Defendants' motion as to Plaintiff's 42 U.S.C. § 1983 claims against the City, Officer Kingsbury, Officer Taylor, Officer Villamor, and Officer Lazarchic. The Court now amends that order to reflect the dismissal of Plaintiff's excessive force claim against Officer Taylor only.

**III.     First Amendment Retaliation**

In broad terms, the First Amendment "protects the right to be free from government abridgment of speech." *Ysura v. Pcatello Educ. Ass'n*, 129 S. Ct. 1093, 1098 (2009). To establish a *prima facie* case of retaliation for exercise of First Amendment rights under 42 U.S.C. § 1983, Plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) the government took an adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity or speech. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003). The Eighth Circuit Court of Appeals has highlighted the following passage from *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982): "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Id.* at 729. In addition, the causal connection is generally a question for the jury, unless the question of causation is "so free from doubt as to justify taking it from the jury." *Revels*, 382 F.3d at 876 (citations omitted).

Defendants do not contest that Plaintiff engaged in protected speech. Instead, Defendants assert that Plaintiff cannot show either a causal connection between his protected activity and the allegedly retaliatory acts or that the allegedly retaliatory acts

10

were such that they would chill a person of ordinary firmness from engaging in protected First Amendment activity. The Court disagrees.

Plaintiff has submitted evidence that during the time period when he was taking photographs and videotaping police actions in downtown Minneapolis and after he made various complaints regarding police behavior, he was confronted by the police on numerous occasions. These confrontations include the August 4, 2001 incident where Officer Kingsbury punched Plaintiff. In addition, Plaintiff has submitted evidence that he was repeatedly approached by the police while working in Minneapolis, ticketed, and criminally prosecuted. Nearly all of the criminal prosecutions were ultimately dismissed by prosecutors. Plaintiff claims that many of the tickets and criminal charges were unwarranted and wrongfully issued or pursued. Plaintiff has also presented evidence that the police seized his cameras on several occasions, which prevented him from working. Further, Plaintiff has submitted evidence that could demonstrate retaliatory motive. This evidence includes, but is not limited to, the following examples. First, Plaintiff submitted evidence that after learning that Plaintiff had dismissed a CRA complaint, Officer Lazarchic said to Plaintiff "now I can call off my dogs." In addition, Plaintiff has submitted evidence that after being issued a ticket, Officer Lazarchic explained that he was issuing the ticket to Plaintiff because "you have a lawsuit in my mailbox." Plaintiff also submits more generally that the police communicated with various nightclub owners immediately before those nightclubs kicked Plaintiff out as evidence that the police interfered with his ability to work. Finally, Plaintiff submits that the close proximity

11

between Plaintiff's protected activities and the retaliatory conduct is sufficient to establish causation.

Viewing the record in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendants engaged in acts directed at Plaintiff in retaliation for Plaintiff taking photographs of police officers and for complaining about police conduct. In addition, a reasonable factfinder could conclude that the actions of the Minneapolis police officers would chill a person of ordinary firmness from continuing in the activity. Accordingly, Defendant's motion for summary judgment on Plaintiff's First Amendment retaliation claim is denied.

## IV. Substantive Due Process

Plaintiff asserts that Defendants' actions constitute a substantive due process violation. In order to prevail on his substantive due process claim, Plaintiff must show "that the government action was truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law." *Graning v. Sherburne County,* 172 F.3d 611, 617 (quoting *Anderson v. Douglas County,* 4 F.3d 574, 577 (8th Cir. 1993)). The government action in question must shock the conscience or be otherwise offensive to judicial notions of fairness and human dignity. *See Costello v. Mitchell Pub. Sch. Dist. 79,* 266 F.3d 916, 921 (8th Cir. 2001).

As explained above, a reasonable factfinder could conclude that Defendants engaged in acts directed at Plaintiff in retaliation for Plaintiff taking photographs of police officers and for complaining about police conduct. Plaintiff alleges that the

retaliatory behavior includes physical assault, numerous wrongfully issued tickets, unwarranted criminal charges, and the seizure of his cameras and the other activities that kept Plaintiff from being able to work downtown. Viewing the evidence in the light most favorable to Plaintiff, and considering the on-going and persistent nature of the alleged harassment, the Court concludes that a reasonable juror could find that the alleged actions of the Minneapolis police officers, taken together, are sufficiently shocking so as to constitute a substantive due process violation. Accordingly, Plaintiff's substantive due process claim survives summary judgment.

## V.    *Monell* Liability

It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978). Thus, a government body cannot be held liable under § 1983 merely because it employs a tortfeasor. *Id.* at 691-92. For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id.* at 694. An "[o]fficial policy involves a deliberate choice to follow a course of action . . . made from among various alternatives[ ] by an official who is determined by state law to have the final authority to establish governmental policy." *Ware v. Jackson County, Mo*., 150 F.3d 873, 880 (8th Cir. 1998) (quotations and brackets omitted). Alternatively, a custom "is demonstrated by: (1) [t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of

such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]he plaintiff's injury by acts pursuant to the governmental entity's custom, *i.e.,* proof that the custom was the moving force behind the constitutional violation." *Id.* (brackets omitted).

Here, Plaintiff asserts that the City is liable due to the pattern of retaliatory conduct of its officers. Specifically, Plaintiff claims that the Minneapolis police have engaged in a years-long campaign of retaliation against Plaintiff, Minneapolis Police Department officials have been aware of the retaliation, and the Minneapolis Police Department failed to stop the campaign of retaliation. Plaintiff asserts that the Minneapolis Police Department lacks a policy prohibiting retaliation based on the exercise of First Amendment rights. In addition, Plaintiff asserts that the retaliation was so widespread and persistent that it constitutes a custom, and that policymaking officials knew about the retaliation but did nothing to stop it. Defendants, on the other hand, argue that Plaintiff's *Monell* claim must fail because Plaintiff has offered no evidence that the police administration was aware of any pattern of misconduct on the part of its officers and has otherwise failed to offer proof that would give rise to municipal liability.

Considering the numerous incidents outlined above, Plaintiff has submitted evidence to support a persistent pattern of retaliation against Plaintiff. There is also evidence that the Minneapolis Police Department knew of the alleged on-going harassment of Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has demonstrated the existence of a genuine issue of fact that

would support a *Monell* claim.[5]

## VI. Unnamed Defendants

In his Complaint, Plaintiff names "John Does 1-5" as Defendants. Defendants assert that with the exception of Officer Wourinen,[6] Plaintiff fails to both identify specific conduct and to allege any personal characteristics that would enable identification of these hypothetical persons. Plaintiff has not opposed Plaintiff's request to dismiss the unnamed Defendants. Therefore, the Court grants summary judgment as to John Does 1-5 and dismisses them from this action.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 11) is **GRANTED IN PART** and **DENIED IN PART** as follows:

---

[5] In their motion for summary judgment, Defendants have asked the Court to dismiss Plaintiff's claim for injunctive relief, Plaintiff's claim that Defendants tampered with videotape evidence, and Plaintiff's allegation that he was subjected to death threats by an unidentified individual. In light of the Court's conclusions above, the Court declines to dismiss the claim for injunctive relief. The Court does not read Plaintiff's complaint to include a separate claim for tampering with videotape evidence. Instead, the alleged tampering appears to have been cited as evidence to support Plaintiff's 42 U.S.C. § 1983 claims. To the extent that Defendants have evidentiary objections to the tampering allegation or to the evidence of death threats, the Court will entertain those objections at an appropriate time in the future.

[6] Plaintiff, however, indicated that he intends to serve Officer Wourinen in an "upcoming lawsuit." (Pl.'s Mem. in Opp. to Summ. J. at 23.)

      a.      Defendants' motion is **GRANTED** as to Defendants John Does 1-5.  Defendants John Does 1-5 are **DISMISSED WITH PREJUDICE** from this action.

      b.      Defendant's motion is **GRANTED** as to Plaintiff's 42 U.S.C. § 1983 claim for excessive force against Officer Taylor and **DENIED** as to Plaintiff's 42 U.S.C. § 1983 claim for excessive force against Officer Kingsbury.

      c.      Defendants' motion is **DENIED** as to Plaintiff's 42 U.S.C. § 1983 claims for First Amendment retaliation and substantive due process violations against the City of Minneapolis, Officer Jonathan Kingsbury, Officer Taylor, Officer Jomar Villamor, and Officer Kevin Lazarchic.

2.      The August 31, 2009 Order is hereby amended to reflect the dismissal of Plaintiff's excessive force claim against Officer Taylor.


Dated:  September 15, 2009              <u>s/Donovan W. Frank</u>
                                                  DONOVAN W. FRANK
                                                  United States District Judge